1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

United States of America,

Plaintiff,

v.

George Washington Sims, III,

Defendant.

Case No. 2:21-cr-00026-GMN-BNW

**ORDER**

Before the Court is the government's motion for a no-contact order, filed at ECF No. 19. Defendant's response is at ECF No. 21, and the government's reply is at ECF No. 22. The Court previously held a hearing on this motion, took it under submission, and indicated that a written ruling would follow. ECF No. 27.

**I.     Background**

Defendant is charged in a six-count indictment with Sex Trafficking of Children in violation of 18 U.S.C. § 1591 (three counts), Sexual Exploitation of Children in violation of 18 U.S.C. § 2251 (two counts), and Transportation of a Minor with Intent to Engage in Criminal Sexual Activity in violation of 18 U.S.C. § 2423 (one count). ECF No. 13. These charges relate to alleged crimes committed against Victims 1-3. Victims 1-3 were 16 years old at the time of the alleged offenses. Defendant is detained pending trial on these charges.

Defendant also allegedly sex-trafficked Victims 4-5. These victims were 19 years old and identified in a separate state case. Both victims filed a police report with the Las Vegas Metropolitan Police Department (LVMPD) stating that Defendant sex trafficked them. Defendant entered an Alford plea related to Victims 4-5 in the state case.

Since being detained, Defendant allegedly tried to contact at least one minor victim in this case and one victim from the state case. Defendant sent two letters to one of the minor victims. It appears that a relative intercepted the letters and contacted the FBI, who retrieved the letters. In the letters, Defendant wrote about the charges related to Victims 4-5 and asked the minor victim to contact those victims and "please tell them to stop speaking on my names with the lies they trying to use." ECF No. 19 at 3.

There were also allegedly papers in Defendant's possession that suggest he may have had plans to contact the same victim or a different victim. These papers said, "Tell her give you a address right now so I can send her this paperwork tell her when she get it post it on the Fbook she making right now. Make sure she tell everything out for you so theres no mistake. I love her be safe" and "Remember to contact records to prove you never contacted [Victim 4] and also get [Victim 1] to prove she never sent anything to her at all." *Id.* at 4.

In addition to attempting to contact at least one victim through letters, Defendant made several statements in jailhouse calls related to contacting victims and/or witnesses. The government points out the following statements of Defendant:

> "Bro all I really need to do bro, whoever the victims is whoever they is they need to come to court and basically keep it real and say 'I'm not tripping. He had nothing to do with that, none of that shit. We was just scared and we lied. Period.'" ECF No. 22 at 2.

> "I'm not really tripping cuz if all they need to do is come to court or talk to my attorney [expletive] and just say oh they was scared to go to jail or something, so they just tossed my name in there, you feel me?" *Id.* at 3.

> "[I]ts so easy to beat this shit . . . just talk to my [expletive] attorney . . . talk to my attorney and give a statement and say 'woo woo whatever was said this shit [expletive] whatever, you feel me, I was lying.'" *Id.*

When asked when he was getting out of jail, Defendant responded, "It depends [expletive]. If I can get them to talk to my attorney or if I can get them to recant on their statements and shit, [expletive] I go to trial in two months." *Id.* Defendant also discussed how he needs the victims to speak with his attorney and asked a person he was speaking with to help him

with that. *Id.* Defendant also stated that he wanted victims to come to court and tell the truth. *Id.* at 3-4. Defendant said he was

> trying to get them to talk to my attorney and give a statement. So, if they give a statement to my attorney right now, my attorney can take it to the Court, like 'hey, they gave this statement earlier but they saying this right now. They recanting their statement. So there's no reason to keep holding him in there.'

*Id.* at 4.

## II.    The Government's Argument

Based on these letters, notes, and recorded statements, the government seeks a no-contact order. The government seeks an order dictating that Defendant shall have no contact with Victims 1-4 and their relatives, directly or indirectly. The government further requests that Defendant's contact with Victim 5 be limited to contact regarding his parent-child relationship with his biological child. The government further specifies that Defendant should be prohibited from reaching out to these individuals and responding to these individuals, should they contact him (except as specified regarding Victim 5).

In its briefing and at oral argument, the government cited several different statutes and cases that it suggested give the Court the power to issue this no-contact order. The Court will briefly discuss each legal basis upon which the government relies.

First, the government stated that it made its motion under the Crime Victims' Rights Act, 18 U.S.C. §§ 3771(a)(1) and (c)(1). The government argued that this statute gives crime victims the right to be reasonably protected from the accused and obligates the government to ensure victims are accorded their rights.

Second, the government argued that "if a particular condition of restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" ECF No. 19 at 5. The government cited *Bell v. Wolfish*, 441 U.S. 520, 539 (1979) for this proposition. Similarly, the government cited *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002) for the proposition that restrictions that are incidental to a legitimate government purpose are constitutional. The government's argument appears to be that restricting Defendant's contact with Victims 1-5 is reasonably related to the legitimate government interest

of protecting victims under the Crime Victims' Rights Act. Additionally, the victims and the relatives of the victims are potential witnesses in this case that the government is trying to protect. The government argued that the only way to ensure the integrity of the trial and prevent witness tampering is to impose the requested no-contact order.

Third, the government notes that under the Bail Reform Act (18 U.S.C. § 3142(c)(1)(B)(v)), the Court must order a *released* defendant to avoid all contact with an alleged victim of certain crimes and with a potential witness who may testify concerning the offense. Defendant is charged with one of these crimes. Accordingly, the government notes that if Defendant was released, he would be subject to a no-contact order, and it makes little sense if the government cannot ask for the same order now that he is detained.

Fourth, the government argued that the Court has the inherent authority to protect witnesses and victims, and that this power to protect witnesses stems from the broad powers of the trial judge to ensure the orderly and expeditious progress of a trial. The government cited *Wheeler v. United States*, 640 F.2d 1116 (9th Cir. 1981) for these propositions.

### III.    Defendant's Opposition

Defendant opposed the government's motion. Defendant's brief focused on the background and facts of the case, including the fact that it does not appear any victims asked the government to move for a no-contact order.

In its brief, Defendant did not state what the standard for imposing a no-contact order is; however, during oral arguments, Defendant cited the test laid out in *Wheeler v. United States*, 640 F.2d 1116 (9th Cir. 1981). To satisfy this test, the government must show "that the activity restrained poses a clear and present danger or a serious and imminent threat to a protected competing interest; the restraint must be narrowly drawn and no reasonable alternatives, having a lesser impact on First Amendment freedoms, must be available." *Id.* at 1124 (internal citations omitted). Defendant argued that the government has not met this test, and the Court should not enter a no-contact order.

### IV.    Analysis

The Court must determine whether it has the authority to impose a no-contact order, as the government requests, and if so, whether the government demonstrated that a no-contact order is appropriate here. Again, the Court notes that the government advanced several sources of authority under which the Court might impose a no-contact order. The Court will address each in turn.

First, the government stated that it moved for a no-contact order under the Crime Victims' Rights Act, 18 U.S.C. §§ 3771(a)(1) and (c)(1). Subsection (c)(1) of this statute provides, "Officers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime shall make their best efforts to see that crime victims are notified of, and accorded, the rights described in subsection (a)." Subsection (a)(1) provides, "A crime victim has the . . . right to be reasonably protected from the accused." Accordingly, the provisions the government moved under provide that the government shall make their best effort to ensure that crime victims are reasonably protected from the accused. However, these provisions do not appear, at least on their face, to vest the Court with any power to impose no-contact orders that may infringe on a defendant's First Amendment rights. Without further authority and argument from the government, the Court is unable to hold that these provisions of the Act empower the Court to impose no-contact orders.

Second, the government argued that "[I]f a particular condition of restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" ECF No. 19 at 5. The government cites *Bell v. Wolfish*, 441 U.S. 520, 539 (1979) for this proposition and suggested that if a condition of pretrial confinement is not punishment, then it is permissible.

The Court does not agree that the rule the government quoted from *Bell* provides the applicable test for the present motion. This is so because this rule dealt with the constitutionality of pretrial conditions of confinement that implicated the due process clause, not other constitutional provisions such as the First Amendment. The Court in *Bell* stated, "In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate *only the*

*protection against deprivation of liberty without due process of law*, we think that the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell*, 441 U.S. at 535 (emphasis added). At another point, the Court stated, "what is at issue when an aspect of pretrial detention *that is not alleged to violate any express guarantee of the Constitution* is challenged, is the detainee's right to be free from punishment . . . ." *Id.* at 534 (emphasis added). Accordingly, the Court does not believe that the rule the government quoted from *Bell* provides the standard for evaluating whether the requested no-contact order would be appropriate in this case, as the Defendant's First Amendment rights would be impinged, too.

Relatedly, the government argued that restrictions that are incidental to a legitimate government purpose are constitutional under *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002). The Court also does not believe that *Valdez* supplies the standard the government must meet to obtain a no-contact order. Like in *Bell*, the Court in *Valdez* provided that pretrial detainees have a due process right to be free from punishment. *Id.* If a pretrial restriction is incidental to a legitimate government purpose (not punishment), then the restriction does not violate a defendant's due process rights. *Id.* Again, this standard is focused on due process rights, not First Amendment rights.[1]

Third*,* the government argued that under the Bail Reform Act (18 U.S.C. § 3142(c)(1)(B)(v)), the Court must order a *released* defendant to avoid all contact with an alleged victim of certain crimes and with a potential witness who may testify concerning the offense. The government notes that if Defendant was released, he would be subject to a no-contact order, and it makes little sense if the government cannot ask for this order now that he is detained.

Because Defendant is detained, this subsection of the Bail Reform Act does not apply. Additionally, there is persuasive Ninth Circuit authority that the government cited that appears to

---

[1] The Court in *Valdez* also discussed whether certain prison regulations violated a pretrial detainee's First Amendment rights. *Id.* at 1047-49. The court held that a "prison regulation that impinges on an inmate's constitutional right 'is valid if it is reasonably related to legitimate penological interests.'" *Id.* at 1048. Again, the Court does not believe this language or the discussion related to the First Amendment is relevant to the motion before the Court, as it does not appear that "penological interests" are at issue here (but rather the government's interest in victims' protection and the administration of justice). However, to the extent *Valdez* does provide the relevant test (from *Turner v. Safley,* 482 U.S. 78 (1986)), the government did not argue that this is the relevant test or analyze the facts of this case under the *Turner* test. *See id.* at 1048-49.

1   provide the standard the government must meet if it seeks a no-contact order (which the Court

2   will discuss next). Because there is persuasive Ninth Circuit authority on point and the Bail

3   Reform Act does not apply to this situation, the Court is not persuaded by the government's

4   argument related to the Bail Reform Act.

5          Fourth, the government argued that the Court has the inherent authority to protect

6   witnesses and victims, and that this power to protect witnesses stems from the broad powers of

7   the trial judge to ensure the orderly and expeditious progress of a trial. The government cites

8   *Wheeler v. United States*, 640 F.2d 1116 (9th Cir. 1981) for these propositions.

9          The Court agrees and believes that *Wheeler* provides the standard the government must

10  meet to obtain a no-contact order, albeit in *dicta*. In *Wheeler*, the Ninth Circuit provided that for

11  the government to have a no-contact order upheld on remand, it had to show that the order

12  satisfied the two part test laid out in *United States v. Sherman*, 581 F.2d 1358 (9th Cir. 1978).

13  *Wheeler*, 640 F.2d at 1124. To satisfy this test, the government must show "that the activity

14  restrained poses a clear and present danger or a serious and imminent threat to a protected

15  competing interest; the restraint must be narrowly drawn and no reasonable alternatives, having a

16  lesser impact on First Amendment freedoms, must be available." *Id.* (internal citations omitted).

17         Here, this means that the government must show (1) that the activity restrained

18  (contacting Victims 1-5 and their relatives) poses a clear and present danger or a serious and

19  imminent threat to a protected competing interest (here, the victim's right to be protected and/or

20  the administration of justice); and (2) that the no-contact order is narrowly drawn and no

21  reasonable alternatives, having a lesser impact on First Amendment freedoms, must be available.

22  *See id.* The Court will first discuss this test as it relates to the victims' rights to be protected.

23  Then, the Court will discuss the test as it relates to the administration of justice.

24         First, the Court does not find that Defendant's contact with Victims 1-5 or their relatives

25  poses a clear and present danger or serious and imminent threat to the victims. As an initial

26  matter, Defendant is detained and thus cannot have physical contact with the victims or their

27  relatives. Further, the Court notes that neither Victims 4-5 nor the relatives of the victims are

28  actually victims in this case. Finally, and most importantly, the government has not explained

why the victims need protection based on their status as victims. For example, it does not appear that Defendant is harassing the victims, etc. Rather, as the Court will discuss next, the focus of the government's argument seems to be that Defendant's contact with victims should be limited because he is asking them to recant their statements and thus interfering with the administration of justice. Accordingly, the Court does not find that Defendant's contact with Victims 1-5 or their relatives poses a clear and present danger or serious and imminent threat to the victims such that a no-contact order should be imposed on this basis.[2]

Second, the Court does not find that Defendant's contact with the relatives of the victims poses a clear and present danger or serious and imminent threat to the administration of justice. This is so because there is no evidence that Defendant has attempted to contact the victims' relatives (directly or indirectly) to get them to change their statements or otherwise interfere with the administration of justice. The Court does, however, find that Defendant's contact with Victims 1-5 (indirectly and directly) poses a clear and present danger and serious and imminent threat to the administration of justice. This is so because Defendant has repeatedly tried to get these victims to recant their statements, as discussed further below.

Regarding Victims 4-5, both victims filed a police report with the LVMPD stating that Defendant sex trafficked them. As previously discussed, Defendant then sent two letters to one of the minor victims in this case. In the letters, Defendant wrote about the charges related to Victims 4-5 and asked the minor victim to contact those victims and "please tell them to stop speaking on my names with the lies they trying to use." ECF No. 19 at 3. In other words, it appears Defendant asked another victim to try and get Victims 4-5 to change their statements.

Regarding Victims 1-3, it appears Defendant is also trying to get them to change their stories through other people. Defendant has stated:

> "Bro *all I really need to do* bro, *whoever the victims is whoever they is they need to come to court and basically keep it real and say* 'I'm not tripping. He had nothing to do with that, none of that shit. We was just scared and *we lied*. Period.'" ECF No. 22 at 2 (emphasis added).

---

[2] If the government has additional evidence that the victims are being, for example, harassed by Defendant such that the Court's intervention may be necessary to protect them, the government may file another motion and explain this.

"I'm not really tripping cuz *if all they need to do is come to court or talk to my attorney [expletive] and just say oh they was scared to go to jail or something, so they just tossed my name in there*, you feel me?" *Id.* at 3 (emphasis added).

"*[I]ts so easy to beat this shit* . . . just talk to my [expletive] attorney . . . *talk to my attorney and give a statement and say* 'woo woo woo whatever was said this shit [expletive] whatever, you feel me, *I was lying*.'" *Id.* (emphasis added).

When asked when he was getting out of jail, Defendant responded, "It depends [expletive]. If I can get them to talk to my attorney or *if I can get them to recant on their statements* and shit, [expletive] *I go to trial in two months*." *Id.* (emphasis added).

Defendant also asked a person he spoke to in a recorded jailhouse call to help him get the victims to speak with his attorney. *Id.*

Accordingly, it appears that Defendant is actively trying to get Victims 1-3 to recant their statements, previously tried to get Victims 4-5 to change their statements, and may again try to get Victims 4-5 to change their statements since they are potential witnesses in this case. As such, the Court finds that Defendant's contact with Victims 1-5 (indirectly and directly) poses a clear and present danger and serious and imminent threat to the administration of justice. Because the Court makes this finding under the first prong of the *Wheeler* test, the Court must next analyze whether the government's proposed no-contact order is narrowly drawn and no reasonable alternatives, having a lesser impact on Defendant's First Amendment freedoms, are available.

The Court finds that the government's proposed no-contact order is not drawn narrowly enough and that a reasonable alternative, having a lesser impact on Defendant's First Amendment freedoms is available. As previously discussed, the government seeks an order dictating that Defendant shall have no contact with Victims 1 through 4, directly or indirectly. The government further requests that Defendant's contact with Victim 5 be limited to contact regarding his parent-child relationship with his biological child. The Court finds that a reasonable alternative, having a lesser impact on Defendant's First Amendment rights while protecting the administration of justice exists: Defendant shall have no contact with Victims 1-5 related to this case, whether directly or indirectly. Defendant is not to contact Victims 1-5 about this case. Defendant is not to

contact others about contacting Victims 1-5 about this case.[3] Defendant is not to respond to Victims 1-5 if they reach out to him about this case. Defendant is further advised that if he contacts or attempts to contact any of the victims about this case (directly or indirectly), it will be a direct violation of this Court's order, and Defendant will be subject to the consequences that flow from violating a Court order. Additionally, if Defendant violates this order, the Court will consider a blanket no-contact order with Victims 1-5 (except as it relates to Defendant's parental relationship with Victim 5) upon the filing of a proper motion by the government.

Accordingly,

**IT IS ORDERED** that the government's motion for a no-contact order (ECF No. 19) is GRANTED in part and DENIED in part. It is granted to the extent that Defendant shall have no contact with Victims 1-5 related to this case, whether directly or indirectly, as further specified in this order. It is denied in all other respects.

DATED: March 18, 2021

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE

---

[3] This order should not be read to prohibit Defendant from speaking with his attorneys about Victims 1-5. It should also not be read as prohibiting Victims 1-5 from contacting Defendant's attorneys, if they so choose. Presuming Defendant is innocent, as the Court must, it is theoretically possible that Victims 1-5 may want to speak with Defendant's attorneys and/or testify on his behalf. But Defendant, again, is not to contact Victims 1-5 in any attempt to influence their testimony.