1
2

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

3
4
5
6
7
8

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:21-cr-00026-GMN-BNW-1 |
| vs. | ) | |
| | ) | **ORDER** |
| GEORGE WASHINGTON SIMS, III | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

9

10        Pending before the Court is Defendant George Washington Sims, III's ("Defendant's")

11   Motion to Exclude Evidence, (ECF No. 42).  The Government filed a Response, (ECF No. 48),

12   and Defendant filed a Reply, (ECF No. 53).

13        Also pending before the Court is Defendant's Motion to Preclude Expert Testimony,

14   (ECF No. 65).  The Government filed a Response, (ECF No. 67), and Defendant filed a Reply,

15   (ECF No. 72).

16        For the reasons discussed below, the Court **GRANTS in part and DENIES in part**

17   Defendant's Motion to Exclude Evidence and **DENIES** Defendant's Motion to Preclude Expert

18   Testimony.

19   **I.        BACKGROUND**

20        On January 27, 2021, a federal grand jury sitting in the District of Nevada returned an

21   Indictment charging defendant with six counts: three counts of Sex Trafficking of Children in

22   violation of 18 U.S.C. § 1591(a) and (b)(2), two counts of Sexual Exploitation of Children in

23   violation of 18 U.S.C. § 2251(a) and (e), and one count of Transportation of a Minor with

24   Intent to Engage in Criminal Sexual Activity in violation of 18 U.S.C. § 2423(a). (Indictment,

25   ECF No. 13).  The charges arise out of Defendant's conduct with three minor victims, who are

referred to in the Indictment as Victim 1, Victim 2, and Victim 3 (collectively, "minor victims"). (*Id.*).

On March 22, 2021, the Government filed a Notice of Intent to admit evidence of Defendant's other crimes, wrongs, and other acts either as inextricably intertwined evidence or pursuant to Federal Rule of Evidence ("FRE") 404(b). (Govt.'s Notice Admit Evidence Deft.'s Other Crimes ("Notice"), ECF No. 32).  Specifically, the Government intends to admit evidence of Defendant's prior sex-trafficking and attempted sex-trafficking conduct with testimony from two adult victims, referred to in the Notice as Victim 4 and Victim 5 (collectively, "adult victims"), who are not named in the indictment. (*Id.* 1:15–18).  On May 20, 2021, the Government filed a Notice of Expert Testimony explaining that it will call Federal Bureau of Investigation Special Agent Carrie Landau, a sex-trafficking expert. (Notice Expert Test. ("Expert Notice") 2:2–7, ECF No. 58).[1]  Defendant now moves to exclude both the evidence of Defendant's other acts and the expert testimony.

## II.   LEGAL STANDARD

### A.  Motion in Limine

In general, "[t]he court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104(a).  In order to satisfy the burden of proof for Federal Rule of Evidence ("FRE") 104(a), a party must show that the requirements for admissibility are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175, 107 S. Ct. 2775, 97 L.Ed.2d 144 (1987) ("We have traditionally required that these matters [regarding admissibility determinations that hinge on preliminary factual questions] be established by a preponderance of proof.").

---

[1] The Government originally filed notice that the prosecution would call Las Vegas Metropolitan Police Department Sergeant Richard Leung as its sex-trafficking expert. (*See* Notice, ECF No. 36).  However, in its May 20, 2021 Notice, the Government explained that Special Agent Landau would be substituted for Sergeant Leung as the sex-trafficking expert. (Notice 1:20–2:5, ECF No. 58).

"Although the [FRE] do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 83 L.Ed.2d 443 (1984) (citing FRE 103(c)). In limine rulings "are not binding on the trial judge, and the judge may always change [her] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3, 120 S. Ct. 1851, 146 L.Ed.2d 826 (2000); *see also Luce*, 469 U.S. at 41, 105 S. Ct. 460. Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine, the evidence must be inadmissible "on all potential grounds." *See, e.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993).

## B. Federal Rule of Evidence 404(b)

Under FRE 404(b), evidence of crimes, wrongs, or other acts is not admissible to prove the character of an accused in order to show action in conformity with that character. *Arambula-Ruiz*, 987 F.2d at 602; Fed. R. Evid. 404(b)(1). However, this evidence can be admitted under FRE 404(b) if the evidence is used to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b)(2). In order to be properly admitted under FRE 404(b), evidence must satisfy four requirements: "(1) it must prove a material element of the offense for which the defendant is now charged; (2) in certain cases [where knowledge or intent are at issue], the prior conduct must be similar to the charged conduct; (3) proof of the prior conduct must be based upon

sufficient evidence; and (4) the prior conduct must not be too remote in time." *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993).

Nevertheless, the FRE 404(b) analysis is not required for "other acts" evidence if such evidence is actually "inextricably intertwined" with the charged offense. *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987).  Evidence is "inextricably intertwined" when it (1) constitutes a portion of the transaction giving rise to the criminal charge; or (2) may be necessary to allow the prosecution "to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995).  Courts look to both temporal proximity and substantive similarly when determining that evidence is inextricably intertwined. *See United States v. Rrapi*, 175 F.3d 742, 750 (9th Cir. 1999) (evidence of prior uncharged burglaries was "inextricably intertwined" with charged crimes where uncharged burglaries were obtained during period of government surveillance, involved similar pattern of conduct, and occurred close in time to charged crimes); *see United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002) (finding that evidence regarding drug mule's prior drug run was necessary to show why mule was later entrusted with more than $1 million worth of drugs).

## III.   DISCUSSION

### A.  Motion to Exclude Evidence of Other Crimes

The Government intends to introduce evidence of Defendant's purported sex-trafficking conduct in relation to the adult victims. (Notice, 1:15–18, ECF No. 32).  In February 2020, the adult victims filed separate police reports against Defendant, claiming that he attempted to sex-traffic them. (Resp. to Deft.'s Mot. Exclude Evidence 2:13–16, ECF No. 48).  Victim 4 reported that she was staying at Defendant's house for a few weeks when he demanded that she make $500 by prostituting herself. (Victim 4 Interview, Ex. 1 to Notice, ECF No. 32-1).  When Victim 4 refused, Defendant punched, kicked, and yelled at her, eventually slamming her head

against the wall. (*Id.*). Victim 4 reported that Defendant "stripped" her, took all of her

belongings, and kept her at the house for several hours until she agreed to "turn tricks." (*Id.*).

Victim 5 reported that she dated Defendant "on and off" for five years, but recently Defendant

began encouraging her to work for him as a prostitute. (Victim 5 Interview, Ex. 2 to Notice,

ECF No. 32-2).  When Victim 5 refused and failed to bring him any money, Defendant became

physically violent, verbally abusive, broke her glasses, took her phone, and sent himself money

from her CashApp account. (*Id.*).  The Las Vegas Metropolitan Police Department issued an

arrest warrant for Defendant based on Victim 4's Report. (*Id.* 3:15–17).  Defendant was

arrested pursuant to that warrant in California while he was allegedly trafficking Victim 1,

which provided the basis for Defendant's Transportation of a Minor with Intent to Engage in

Criminal Sexual Activity charge. (*Id.* 9:5–7).[2]

     The Government argues that evidence of Defendant's other sex trafficking activities,

which would otherwise be inadmissible character evidence, is admissible as (1) inextricably

intertwined evidence or (2) pursuant to FRE 404(b). (Notice 1:15–18, ECF No. 32).  Defendant

counters that this evidence is not admissible as either inextricably intertwined evidence or

under FRE 404(b).  The Court will address each argument in turn.

       *i.    Inextricably Intertwined Evidence*

     The Government claims that the adult victims' testimony is inextricably intertwined with

the charged offenses because Defendant attempted to traffic the adult victims at the same time

as he allegedly trafficked the minor victims. (Resp. to Deft.'s Mot. Exclude Evidence 7:16–18).

The Government asserts that the adult victims will explain the circumstances surrounding the

charged offenses and the coercive environment in which the minor victims were living. (*Id.*

---

[2] The Government explains that Defendant was eventually charged in state court for the offenses against the adult victims. (Resp. to Deft.'s Mot. Exclude Evidence 5:20–6:8, ECF No. 48).  He pleaded guilty to two counts of conspiracy to commit a crime (gross misdemeanors) and was sentenced to 364 days in custody. (*Id.*).  At the conclusion of his state sentence, Defendant was transferred to federal custody, where he was indicted on the current charges. (*Id.*).

8:7–21).  The adult victims also personally observed some of the conduct perpetuated against the minor victims by Defendant. (*Id.* 7:18–19).  Additionally, the Government claims that Victim 4's testimony is inextricably intertwined evidence because "without explaining [Defendant's] conduct related to Victim 4 and [Defendant's] arrest . . . the jury will be left with a chronological and conceptual void in the investigation of [Defendant's] conduct as it relates to [the minor victims]." (*Id.* 9:5–10).

In response, Defendant argues that mere temporal proximity between the adult and minor victims' experiences does not create enough of a nexus with the charged conduct to support a finding of inextricably intertwined evidence. (Mot. Exclude Evidence 3:12–21, ECF No. 42).  Defendant suggests that the adult victims may testify about their observations of Defendant's conduct toward the minor victims, without explaining the details of the separate conduct perpetuated against them by Defendant. (*Id.* 3:15–21).  For example, Defendant argues that the Government can simply explain that Victim 1 was present when Defendant was arrested in California on a warrant from a separate investigation, rather than divulging the link between Victim 4's police report and the arrest. (*Id.* 4:6–16).

Here, while the Court acknowledges that evidence from adult victims concurrently prostituted by Defendant is intertwined with the charged offenses, the majority of it is not inextricably so.  The only portion of the adult victims' testimony admissible as inextricably intertwined is evidence explaining the adult victims' relationship to Defendant and the minor victims.  This is limited to short, foundational statements from the adult victims explaining either that they worked for Defendant as a prostitute or that Defendant attempted to recruit them to work for him as a prostitute.  This evidence is necessary to provide the jury with a comprehensible story of the prosecution's case because the adult victims are expected to testify about their observations of Defendant's interactions with the minor victims.  Therefore, it is necessary to disclose the adult victims' relationship to Defendant because it will explain to the

jury how the adult victims have personal knowledge of the conduct perpetuated against the minor victims. *See United States v. Jackson*, No. 1:13-CR-246, 2014 WL 1631933, at *2 (W.D. Mich. Apr. 23, 2014) ("[in a prosecution for sex-trafficking of children] evidence that [an adult witness] prostituted for Defendant might be inextricably intertwined with her testimony about recruiting the Minors, *or her eyewitness testimony* regarding the Minors.") (emphasis added).

However, to the extent that the adult victims' testimony will address the details of their personal relationships and interactions with Defendant, it is not inextricably intertwined with the charged conduct.  This includes testimony concerning the events detailed in the adult victims' respective police reports, such as Defendant's verbally and physically abusive behavior towards them.  The adult victims' testimony is not necessary to create a comprehensible story of the charged offenses because the Defendant's alleged conduct against the minor victims is separate from the conduct described by the adult victims in their police reports. *See, e.g.*, *United States v. Jackson*, No. 1:13-CR-246, 2014 WL 1631933, at *2 (W.D. Mich. Apr. 23, 2014) (evidence offered by adult victims trafficked by the defendant is not inextricably intertwined with the charge of sex trafficking of children); *United States v. Windley*, No. CR-10-660-2-PHX-DGC, 2012 WL 2813859, at *6 (D. Ariz. July 10, 2012) (evidence of sex trafficking is not inextricably intertwined when "it does not appear necessary to present the testimony of these women in order for the government to present a comprehensible case"). *But see United States v. Washington*, 810 Fed. Appx. 478, 481 (8th Cir. 2020) (evidence of defendant's prior incidents of domestic assault is inextricably intertwined when the prosecution must show sex-trafficking *by force*) (emphasis added).  Put differently, the jury will not be faced with a conceptual void if the adult victims do not testify about Defendant's offenses against them because Defendant is not on trial for offenses against the adult victims; he is on trial for completely separate offenses against completely separate victims.

1    Similarly, the Court agrees with Defendant that the Government need not explain to the

2    jury that Defendant's arrest warrant was based on Victim 4's police report. (*See* Mot. Exclude

3    Evidence 4:6–16).  The Government's story will still be comprehensible by merely explaining

4    that Victim 1 was with Defendant in California when he was arrested on a warrant from a

5    separate investigation.  Accordingly, the adult victims' testimony is not inextricably intertwined

6    with the charged offense, with the limited exception of explaining the basic relationship

7    between the adult victims and Defendant.

8              ii.    *FRE 404(b) Evidence*

9              Regardless of whether the adult victims' testimony is admissible as inextricably

10   intertwined evidence, their testimony is admissible under FRE 404(b) to show motive,

11   opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, and lack of

12   accident regarding the charged conduct.  In sex-trafficking cases, courts allow evidence of prior

13   bad acts to demonstrate intent or knowledge, such as evidence of a defendant's prior pimping

14   or attempted pimping activities. *See, e.g.*, *United States v. Winters*, 729 F.2d 602, 604 (9th Cir.

15   1984) (allowing evidence of prior similar acts of prostitution to establish defendant's modus

16   operandi, motive, and intent); *United States v. Starks*, 17 Fed. Appx. 530, (9th Cir. 2001)

17   (admitting prior evidence of pimping under FRE 404(b) to "prove that the defendant

18   transported the minor with the specific intent that she engage in prostitution"); *United States v.*

19   *Edwards*, No. CR 16-103-BLG-SPW-1, 2017 WL 4159365, at *3 (D. Mont. Sept. 19, 2017)

20   (citing *Winters*, 729 F.2d at 604) ("evidence of prior pimping and attempted pimping, as well as

21   evidence that [the defendant] previously prostituted, or attempted to prostitute, a victim in a

22   similar way is admissible Rule 4040(b) evidence to show his knowledge that he was

23   transporting victims for prostitution").

24             In the present case, the Government aims to offer the adult victims' testimony to show

25   Defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of

mistake, and lack of accident. (Notice, 3:17–19).  Therefore, the evidence will be admissible under FRE 4040(b) if: (1) the testimony proves a material element of the offense for which the defendant is now charged; (2) the prior conduct is similar to the charged conduct; (3) proof of the prior conduct is based upon sufficient evidence; and (4) the prior conduct is not too remote in time. *See United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993).  In the present case, all four of these factors are met.  The conduct described by the adult victims is both similar to the charged conduct and not too remote in time, because Defendant was allegedly trafficking both the adult victims and the minor victims concurrently.  Further, both intent and knowledge are implicated as elements in the charged offenses. *See, e.g.*, 18 U.S.C. § 2423(a) ("transportation [of a minor] with *intent* to engage in criminal sexual activity"); 18 U.S.C. § 1591(a) ("whoever *knowingly* . . . recruits . . . a person . . . .").  Finally, there is sufficient evidence of Defendant's prior conduct because Defendant's previous victims will be testifying to this conduct. *See United States v. Hinton*, 31 F.3d 817, 823 (9th Cir. 1994) (sufficient evidence exists when a witness testifies to the defendant's prior bad acts).  Accordingly, the adult victims' testimony is admissible under FRE 404(b).

Defendant argues that the probative value of the adult victims' testimony admitted under 404(b) is "far outweighed by Rule 403 concerns." (Mot. Exclude Evidence 5:13–14).  To avoid any unfair prejudice to Defendant, the court will issue a limiting instruction to the jury that the adult victims' similar acts testimony is admissible for the limited purpose of showing Defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, and lack of accident.  The Court will explain to the jury that the Defendant is only on trial for the conduct related to the minor victims as charged in the indictment, and that he is not on trial for the conduct articulated in the testimony of the adult victims.

//

//

### B. Motion to Preclude Expert Testimony

The Government intends to offer the expert testimony of Special Agent Landau on the topics of "pimp culture,"[3] the pimp-prostitute relationship, and the general modus operandi of pimps to assist the jury in understanding the evidence in this case. (Expert Notice 2:2–11, ECF No. 58). Specifically, Special Agent Landau will testify about: (1) terminology used in sex trafficking subculture; (2) typical means sex traffickers use to target and recruit victims; (3) factors making victims more susceptible to influence by sex traffickers; (4) common ways sex traffickers use drugs, force, fraud, manipulation, and coercion to maintain control over victims; and (5) common dynamics between sex traffickers and their victims. (*Id.* 2:18–3:1).

Since 2003, Special Agent Landau has been investigating crimes against children with a focus in the domestic sex trafficking of minors. (*See* Landau CV, Ex. 1 to Resp. to Expert Notice, ECF No. 58-1). She has been involved in in 135 sex trafficking investigations, interviewed over 500 victims of sex trafficking, and interviewed approximately 75 sex traffickers. (*Id.*). Additionally, Special Agent Landau has received over 500 hours of training and instruction on the investigation of crimes against children and the sex trafficking of minors and adults, and herself is certified by the FBI's Crimes Against Children Human Trafficking Unit to provide training regarding domestic minor sex trafficking and child abductions. (*Id.*).

Defendant opposes the introduction of Special Agent Landau's expert testimony and argues that it should be precluded because Special Agent Landau's testimony: (1) is not helpful, relevant, or reliable under FRE 702; (2) is not relevant under FRE 402; and (3) fails FRE 403 balancing. (*See generally*, Mot. Preclude Expert Test. ("Mot. Preclude"), ECF No. 65). The Court will address each argument in turn.[4]

---

[3] Both parties use the term "pimp culture" to refer to the operations of sex-traffickers and their relationships with prostitutes. For the ease of reference, the Court adopts the same term.

[4] Defendant also argues that the Court should preclude Special Agent Landau's expert testimony because the Government's expert notice was deficient under FRE 16(a)(1)(G). (Mot. Preclude 20:5–21:13, ECF No. 65).

1

*i.*     *FRE 702*

2     Under Federal Rule of Evidence 702, an expert may testify if, among other

3 requirements, "the expert's scientific, technical, or other specialized knowledge will help the

4 trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a);

5 *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

6     The Court must ensure that specialized evidence is relevant and reliable. *Daubert*, 509

7 U.S. at 589.

8
> Faced with a proffer of expert scientific testimony ... the trial judge must
> determine at the outset . . . whether the expert is proposing to testify to (1)
9 > scientific knowledge that (2) will assist the trier of fact to understand or
> determine a fact in issue. This entails a preliminary assessment of whether the
10 > reasoning or methodology underlying the testimony is scientifically valid and of
> whether that reasoning or methodology properly can be applied to the facts in
11 > issue.

12

13 *Id.* at 592–93 (footnote omitted).  A judge has discretion under Rule 702 as a "gatekeeper to

14 decide what evidence is relevant, reliable, and helpful the trier of fact." *Desrosiers v. Flight*

15 *Int'l of Fla. Inc.*, 156 F.3d 952, 961 (9th Cir. 1998).  As gatekeepers, district court judges are to

16 consider four nonexclusive factors to determine if the expert opinion is reliable and developed

17 by the scientific method: 1) whether a theory or technique can be tested; 2) whether it has been

18 subjected to peer review and publication; 3) the known or potential error rate; and 4) whether

19 the theory or technique enjoys general acceptance within the relevant scientific community."

20

21

22 _____

23 FRE 16(a)(1)(G) requires the Government to provide a "written summary" of expert testimony to the defendant
including a description of "the witness's opinions, the bases and reasons for those opinions, and the witness's
qualifications."  The Court finds that the expert notice here was adequate because the Government explained, in
24 detail, Special Agent Landau's qualifications and the opinions to be given, as well as established the basis of
those opinions as her education, training, and experience investigating sex trafficking violations. (*See* Expert
25 Notice 4:16–7:15, ECF No. 58); (Landau CV, Ex. 1 to Notice Expert Test., ECF No. 58-1).  As explained below,
any concerns Defendant has about the hypothetical questioning to be asked of Special Agent Landau will be
resolved at calendar call, or at a subsequent reliability hearing, as necessary.

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 813 (9th Cir. 2014); *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1420 (9th Cir. 1998) (quoting *Daubert*, 509 U.S. at 594).

In cases involving technical analysis, rather than scientific evidence, the reliability inquiry should be "flexible," since oftentimes *Daubert*'s four factors may not apply. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999). For example, "when evaluating specialized or technical expert opinion testimony, 'the relevant reliability concerns may focus on personal knowledge or experience.'" *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006) (quoting *Kumho*, 526 U.S. at 150). Expert opinions are reliable when they have a "reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 645.

> a. *Relevance of Special Agent Landau's Proposed Expert Testimony*

Defendant argues that Special Agent Landau's testimony is neither relevant nor helpful to the jury because "jurors can understand the pimp/prostitute relationship without expert assistance." (Mot. Preclude 8:3–4). However, in *United States v. Taylor*, the Ninth Circuit found that "[b]y and large, the relationship between prostitutes and pimps is not the subject of common knowledge." 239 F.3d 994, 998 (9th Cir. 2001). As such, it is well settled in the Ninth Circuit that expert testimony concerning pimp-prostitute subculture is admissible in cases involving child sex trafficking. *See, e.g.*, *United States v. Barnes*, No. 2:13-CR-423-JCM-GWF, 2016 WL 1317724, at *2 (D. Nev. Apr. 1, 2016) (citing *United States v. Brooks*, 610 F.3d 1186, 1196 (9th Cir. July 8, 2010) (finding that expert testimony from qualified detectives on the pimp prostitute subculture is relevant to child sex-trafficking charges).

Because *Taylor* was decided in 2001, Defendant asks the Court to reevaluate whether the relationship between pimps and prostitutes is common knowledge, since pimp culture regularly appears in popular culture mediums, such as songs, video games, documentaries, and journalistic articles. (*See* Mot. Preclude 8:5–11:3) (citing "It's Hard Out There for a Pimp" by Three 6 Mafia, "P.I.M.P." by 50 Cent, Grand Theft Auto: San Andreas, among other things).

1    Defendant argues that "given the prevalence of pimp culture in popular culture and

2    advancements in information sharing, today's average juror has a basic understanding of how

3    pimps and prostitutes work, rendering [Special Agent] Landau's testimony unhelpful." (*Id.*

4    11:4–6).

5        After a review of the various popular culture materials provided by Defendant, the Court

6    agrees that depictions of pimp culture are widely available to the public.  However, assuming,

7    *arguendo*, that media surrounding pimp culture brings the subject within the knowledge of the

8    public, the Court is unconvinced that these references do little more than glamorize and abridge

9    pimp culture, rather than address the reality of the intricate, coercive, and often abusive,

10   dynamics of the complex pimp-prostitute relationship.  As Curtis Jackson, a.k.a. "50 Cent,"

11   explains in the hit song P.I.M.P., pimp culture is "not what you see on TV." *See* 50 Cent,

12   P.I.M.P. (2003).  At best, potential jurors maintain only a surface-level understanding of pimp

13   culture, and therefore, "the relationship between prostitutes and pimps is not the subject of

14   common knowledge." *Taylor*, 239 F.3d at 998.  Accordingly, Special Agent Landau's

15   testimony is both relevant and helpful to assist the jury in understanding the evidence in this

16   case.

17            b.    *Reliability of Special Agent Landau's Proposed Expert Testimony*

18       As an initial matter, the Court finds that Agent Landau is sufficiently qualified to give

19   expert testimony on child sex trafficking and pimp-prostitute dynamics because she has

20   conducted 135 sex trafficking investigations over a seventeen-year career, interviewed

21   hundreds of victims and traffickers, and participated in numerous trainings, both as a student

22   and as an instructor. *See United States v. Brooks*, 610 F.3d 1186, 1195–96 (9th Cir. 2010)

23   (affirming the admission of expert testimony on the business of prostitution and pimp-prostitute

24   relationships from an officer with eight years of experience who had only conducted twenty-

25   five investigations and fifty interviews).

1
2
3
4
5
6
7
8
9

Regarding the reliability of Special Agent Landau's testimony, the analysis will center on her personal knowledge and experiences, because the testimony is based on technical knowledge, rather than scientific evidence. *See Sandoval-Mendoza*, 472 F.3d at 655 (quoting *Kumho*, 526 U.S. at 150). The Government alleges that Agent Landau's testimony is reliable because of her knowledge, experience, training, and education. (Resp. to Mot. Preclude 17:14–16). Defendant argues that the Government has not satisfied its burden to establish Special Agent Landau's reliability because, under *United States v. Valencia-Lopez*, a district court may not rely on a potential expert's general qualifications to establish the reliability of their testimony. (Mot. Preclude 13:17–15:20).

10
11
12
13
14
15
16
17
18
19
20
21
22

In *Valencia-Lopez*, a truck driver transporting peppers from Mexico to the United States was stopped at the border, and border agents discovered marijuana amongst the peppers. 971 F.3d 891, 894–95 (9th Cir. 2020). The truck driver claimed duress, explaining that gunmen confiscated his truck for several hours and then retuned it, forcing him to drive the truck across the border under threat of death. *Id.* In anticipation of the duress defense, the government offered testimony from a Homeland Security Investigations agent as an "expert on the issue of drug trafficking cartels' operations and methodology." *Id.* at 896–97. The agent testified that the probability of a drug trafficking organization entrusting large quantities of illegal drugs to the driver of a commercial vehicle who has been coerced to comply was "almost nil, almost none." *Id.* at 897. The Ninth Circuit held that, although the agent qualified as an expert witness based on his experience and knowledge, his qualifications alone could not establish the reliability of his 'almost nil' conclusion. *Id.* at 900. To demonstrate reliability, the agent needed to explain how his general expertise lent itself to the 'almost nil' conclusion. *Id.*[5]

23
24
25

[5] In its *Valencia-Lopez* decision, the Ninth Circuit also relied on *United States v. Hermanek*, where the government offered an expert witness to interpret words commonly used in the drug trade. 289 F.3d 1076, 1093 (9th Cir. 2002). However, when the expert was asked to interpret words with which he was not previously familiar, the Ninth Circuit determined that his general qualifications and knowledge of drug trafficking terminology alone did not create a reliable basis for testimony on interpretations of new words and phrases. *Id.*

1    The present case is distinguishable from the specialized circumstance considered in

2  *Valencia-Lopez*.  In *Valencia-Lopez*, the agent's testimony went beyond generalized opinions

3  that he could reliably give about drug cartels' modus operandi. *See Valencia-Lopez*, 971 F.3d at

4  900 ("It is one thing for a witness with Agent Hall's expertise to testify as to the risks to a cartel

5  of using a coerced carrier. But that is a far cry from him essentially testifying that the cartel

6  never does it.").[6]  Instead, the agent fashioned a new conclusion, not previously noticed to the

7  court or the opposing party, based on particular facts that could be specifically applied to the

8  case at bar. *Id.*  Here, as evidence by the Government's expert notice, Special Agent Landau

9  will offer only general testimony about pimp culture, the pimp-prostitute relationship, and the

10 general modus operandi of pimps.  Accordingly, the Court finds that her extensive experience

11 conducting investigations into the sex-trafficking of children, including her personal interviews

12 with victims and sex-traffickers, provide a reliable basis for this testimony. *See United States v.*

13 *King*, 703 F. Supp. 2d 1063, 1072 (D. Haw. Mar. 17, 2010) (citing *United States v. Lopez-*

14 *Martinez*, 543 F.3d, 515 (9th Cir. 2008) ("experience and training can provide a reliable basis

15 for an expert's opinions").

16    However, if the Government intends for Special Agent Landau to render conclusions

17 beyond those evidenced by the expert notice that could be construed as particular to the facts of

18 this case, such as through hypothetical questions, the Court expects the Government to explain

---

20 ("the district court [erroneously] relied solely on [the expert's] qualifications without requiring the government
   to explain the method [the expert] used to arrive at his interpretations of words he had never heard before.").

21 The Ninth Circuit requires "a link between [the expert's] knowledge and the particular matter he interpreted." *Id.*
   at 1095.  However, *Hermanek* is also distinguishable from the one at hand.  At present, it does not appear that

22 Special Agent Landau will be providing interpretations of new words, phrases, or scenarios, that she was
   previously unfamiliar with.

24 [6] The Ninth Circuit continued: "The issue is not whether [the agent] had knowledge and experience sufficient to
   allow him to testify as an expert on the modus operandi of drug cartels. He did. Nor is the issue whether he had

25 sufficient 'background for his opinions.' Rather, the issue is whether he provided a reliable basis for his opinion
   that the likelihood of drug cartels using coerced couriers is '[a]lmost nil, almost none.'" *United States v.*
   *Valencia-Lopez*, 971 F.3d 891, 901 (9th Cir. 2020).

them at calendar call.  If further conclusions will be offered, the Court will set a pre-trial

*Daubert* hearing, as necessary, to ensure that the expert's conclusions are reliable.

### ii.    FRE 402

"Irrelevant evidence is not admissible." Fed. R. Evid. 402.  "Evidence is relevant if: (a)

it has any tendency to make a fact more or less probable than it would be without evidence; and

(b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *Velazquez v. City

of Long Beach*, 739 F.3d 1010, 1028 (9th Cir. 2015).  As determined above, the evidence to be

proffered by Special Agent Landau is relevant, and thus is not excludable under FRE 402. *See,

e.g.*, *Barnes*, 2016 WL 1317724, at *2 (finding that expert testimony from qualified detectives

on the pimp-prostitute subculture is relevant to child sex-trafficking charges).

### iii.   FRE 403

"The court may exclude relevant evidence if its probative value is substantially

outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Fed. R. Evid. 403.  Defendant claims that Special Agent Landau's testimony should be

excluded because it will confuse the issues in the case by shifting the focus to the "evils of

pimping," rather than the particular facts of the case, which will inflame the passions of the

jury. (Mot. Preclude 19:19–20:4).  However, as the Government explains, any prejudicial effect

from Special Agent Landau's testimony does not outweigh its probative value because her

testimony directly impacts the jury's ability to evaluate the evidence by providing contextual

knowledge of pimp culture and the relationship between pimps and prostitutes.  Further, the

Government explains that Special Agent Landau will not offer any opinion testimony about the

victims, Defendant, or "the particular facts in this case." (Expert Notice 7:16–22); (Resp. to

Mot. Preclude 22:5–8).  Accordingly, the Court finds that the prejudicial effect of Special Agent

Landau's testimony does not outweigh its probative value.

IV.    **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant's Motion to Exclude Evidence, (ECF No. 42), is **GRANTED in part and DENIED in part**.[7]

**IT IS FURTHER ORDERED** that Defendant's Motion to Preclude Expert Testimony, (ECF No. 65), is **DENIED**.

**DATED** this   23   day of July, 2021.

_____
Gloria M. Navarro, District Judge
United States District Court

---

[7] Defendant's Motion is granted to the extent that the majority of the adult victims' testimony is not admissible as inextricably intertwined evidence, except for limited testimony concerning the relationship between the adult victims and Defendant.  Defendant's Motion is denied to the extent that the adult victims' testimony is admissible under FRE 404(b).